UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| Jermaine Jamaica Campbell,<br><br>    Plaintiff<br><br>v.<br><br>Greg Cox, *et al.*,<br><br>    Defendants | 2:13-cv-02303-JAD-VCF-3<br><br>**Order Granting Motion For Summary Judgment, Denying Motion for Preliminary Injunction, Denying Motion for Order to Show Cause, Entering Judgment, and Closing Case**<br><br>[ECF Nos. 40, 44, 45] |

    Nevada state prison inmate Jermaine Jamaica Campbell sues a handful of Nevada prison officials, correctional officers, and prison medical staff for alleged civil-rights violations under 42 USC § 1983. Defendants move for summary judgment, arguing that Campbell's claims fail as a matter of law and are factually unsupported.[1] Campbell offers no response to defendants' motion, and he did not conduct discovery. Because Campbell's claims either fail as a matter of law or lack evidentiary support, I grant defendants' motion for summary judgment, enter judgment in defendants' favor and against Campbell, deny Campbell's pending motions as moot, and close this case.[2]

**Background**

    Campbell is currently serving a life sentence at Nevada's High Desert State Prison ("HDSP").[3] Campbell sues Nevada Department of Corrections ("NDOC") Director James Cox, HDSP Warden Dwight Neven, correctional officers ("COs") Mark Orenstein, Christopher Neville, and Daniel Navarez, Sergeant David Joseph, Dr. Romeo Aranas, food-service manager Duane Wilson, the NDOC, and unnamed Northern Nevada Correctional Center ("NNCC") medical staff.

---

[1] ECF No. 40.

[2] I find these matters suitable for disposition without oral argument. L.R. 78-1.

[3] ECF No. 9 at 1.

He asserts seven claims alleging First, Eighth, and Fourteenth Amendment violations. Campbell alleges that defendants retaliated against him for filing prison grievances, subjected him to unconstitutional conditions of confinement, and were deliberately indifferent to serious risks to his safety and his pressing medical needs. The events giving rise to Campbell's claims allegedly occurred between March 2012 and April 25, 2014, with the bulk occurring at HDSP.

## Discussion

### A.  Summary-Judgment Standards

Summary judgment is appropriate when the pleadings and admissible evidence "show there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."[4] When considering summary judgment, the court views all facts and draws all inferences in the light most favorable to the nonmoving party.[5] If reasonable minds could differ on material facts, summary judgment is inappropriate because its purpose is to avoid unnecessary trials when the facts are undisputed, and the case must then proceed to the trier of fact.[6]

If the moving party satisfies FRCP 56 by demonstrating the absence of any genuine issue of material fact, the burden shifts to the party resisting summary judgment to "set forth specific facts showing that there is a genuine issue for trial."[7] The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts"; he "must produce specific evidence, through affidavits or admissible discovery material, to show that" there is a sufficient evidentiary basis on which a reasonable fact finder could find in his favor.[8] The court only considers

---

[4] *See Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986) (citing FED. R. CIV. P. 56(c)).

[5] *Kaiser Cement Corp. v. Fishbach & Moore, Inc.*, 793 F.2d 1100, 1103 (9th Cir. 1986).

[6] *Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir. 1995); *see also Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994).

[7] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986); *Celotex*, 477 U.S. at 323.

[8] *Bank of Am. v. Orr*, 285 F.3d 764, 783 (9th Cir. 2002) (internal citations omitted); *Bhan v. NME Hosps., Inc.*, 929 F.2d 1404, 1409 (9th Cir. 1991); *Anderson,* 477 U.S. at 248–49. The court may not grant a motion for summary judgment by default. *Heinemann v. Satterberg*, 731 F.3d 914, 917 (9th Cir. 2013).

properly authenticated, admissible evidence in deciding a motion for summary judgment.[9]

Section 1983 "is not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred."[10] To prevail on a § 1983 claim, a plaintiff must show that (1) a person acting under color of state law (2) violated a right secured to him by the Constitution or the laws of the United States.[11]

Defendants move for summary judgment, arguing that all of Campbell's allegations boil down to uncomfortable prison conditions and do not rise to the level of an actionable § 1983 claim.[12] Campbell offers no response. Instead, in the face of defendants' summary-judgment challenge, Campbell filed a motion to compel discovery[13] and motions for a preliminary injunction and for an order to show cause.[14] Campbell's motion to compel sought responses to his first set of interrogatories, which he served on defendants on June 11, 2015[15]—11 days before discovery closed.[16] Magistrate Judge Koppe denied Campbell's motion to compel because, by serving his discovery requests only 11 days before the discovery cut-off, Campbell failed to give defendants sufficient time to respond.[17] Campbell's failure to conduct timely discovery leaves him with a glaring dearth of evidence to prove his claims.

---

[9] FED. R. CIV. P. 56(c); *Orr*, 285 F.3d at 773–74.

[10] *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (internal citations and quotations omitted).

[11] *West v. Atkins*, 487 U.S. 42, 48–49 (1988).

[12] ECF No. 40.

[13] ECF No. 43.

[14] ECF Nos. 44, 45.

[15] ECF No. 47-1 at 1.

[16] ECF No. 27 at 2.

[17] ECF No. 49 at 2.

**B.     NDOC and the unnamed NNCC medical-staff defendants are entitled to summary judgment.**

At the outset, I grant summary judgment for defendants on all claims against NDOC and the unnamed NNCC medical-staff defendants. The NDOC is an arm of the state and is therefore not a "person" amenable to suit for § 1983 purposes.[18] The unnamed NNCC medical staff are doe defendants who must be dismissed. In the Ninth Circuit, "doe" pleading is generally disfavored, but "where the identify of alleged defendants will not be known prior to the filing of a complaint . . . [t]he plaintiff should be given an opportunity through discovery to identify the known defendants . . . ."[19] Campbell was given an opportunity to identify these doe defendants through discovery and failed to do so. These defendants have never been identified or served. Therefore, all claims against the unnamed NNCC medical staff defendants are dismissed without prejudice.

**C.     The remaining defendants are entitled to summary judgment in their favor because Campbell's claims either fail as a matter of law or lack evidentiary support.**

*1.     Claim one—retaliation*

Campbell asserts that COs Orenstein and Neville violated his First Amendment right to prison grievance procedures.[20] Campbell alleges that CO Orenstein retaliated against him for filing a prison grievance by depriving him of food for 27 hours, filing false disciplinary charges against him, and serving him cold food.[21] CO Neville also retaliated against Campbell by depriving him of food for 13 hours.[22]

To prevail on a § 1983 retaliation claim against prison actors, a prisoner must show that "he was retaliated against for exercising his constitutional rights and that the retaliatory action does not

---

[18] *Whitmire v. Graham*, Case No. 3:11-cv-00502-LRH-VPC, 2014 WL 228557, at *3 (D. Nev. Jan. 21, 2014).

[19] *Wakefield v. Thompson*, 177 F.3d 1160, 1163 (9th Cir. 1999) (internal citations omitted).

[20] ECF No. 9 at 5.

[21] *Id.*

[22] *Id.* at 6.

advance legitimate penological goals, such as preserving institutional order and discipline."[23]

To refute Campbell's allegations that COs Orenstein and Nevil deprived him of food for several hours and filed a false disciplinary charge against him in retaliation for his complaints about the food, defendants offer the NDOC notice of charges form stemming from the alleged incident.[24] The form reflects that CO Orenstein wrote Campbell up for failure to follow rules and regulations and disobedience. The form indicates that when CO Orenstein went to Campbell's cell to deliver breakfast and lunch on February 4, 2013, the cell light was covered and the cell was extremely dark.[25] CO Orenstein ordered Campbell and his cellmate to uncover the lights and warned that their refusal to do so would constitute a refusal to eat per Operational Procedure (OP) 711. Campbell and his cellmate refused to uncover the light, so CO Orenstein left without giving either inmate his breakfast or lunch.[26] OP 711.13(3) requires inmates housed in disciplinary segregation to turn on the cell light and leave it completely uncovered during meal service.[27] If the inmate fails to turn on or uncover the light, his actions may be deemed a refusal to eat that meal.[28] Associate Warden Jennifer Nash has explained by declaration that the light policy during mealtime is designed "to ensure inmate safety" because "prison officials must be able to see and know what is going on in an inmate's cell" and "ensure that inmates are alive and safe."[29]

Campbell offers no evidence to show that he was denied these meals in retaliation for filing prison grievances rather than for his failure to follow prison procedures. The record is also devoid of

---

[23] *Barnett v. Centoni*, 31 F.3d 813, 916 (9th Cir. 1994) (citing *Rizzo v. Dawson*, 778 F.2d 527, 532 (9th Cir. 1985)).

[24] ECF No. 40-2 at 2. Defendants' exhibits have been authenticated by the Declaration of Associate Warden Jennifer Nash, *see* ECF No 42-1, who has demonstrated her personal knowledge of these documents and relevant events.

[25] *Id.*

[26] *Id.*

[27] ECF No. 40-3.

[28] *Id.*

[29] ECF No. 42-1 at ¶ 4.

evidence to show that the requirement that inmates housed in disciplinary segregation leave their lights on during meal times does not advance any penological goal. Accordingly, there is no genuine issue for trial, and defendants are entitled to summary judgment on claim one.

### 2. Claim two—retaliation

Cambell next alleges that Sgt. Joseph and CO Nevarez "colluded to form a retaliatorial campaign" against him for filing prison grievances complaining about the prison food.[30] According to Campbell, Sgt. Joseph and CO Nevarez attempted to assault and batter him through other HDSP inmates by starting lock-down 45 minutes early and telling the other inmates that the early lock-down was due to Campbell's frequent grievances.[31] Cambell now "fear[s] for his life, [because] the inmates think he is a snitch."[32] CO Nevarez has also retaliated against Campbell by holding his mail a week before giving it to him and searching his cell three times per week.[33]

Campbell offers no evidence to show that Sgt. Joseph and CO Nevarez retaliated against him by starting lock-down 45 minutes early and telling the other inmates that the early lock-down was Campbell's fault. The daily shift log for the date of the alleged incident shows that yard time was terminated early because lunch arrived early.[34] Operational procedure 704 requires unit staff to immediately report to the yard and begin serving meals when culinary items arrive in the quad,[35] and Associate Warden Nash has explained in her declaration that this policy advances the penological goal of preventing inmates from hiding in the large food carts or stealing food from the carts.[36] This evidence belies Campbell's claim that Sgt. Joseph and CO Nevarez locked the yard down early due

---

[30] ECF No. 9 at 7.

[31] *Id.*

[32] *Id.* at 8.

[33] *Id.*

[34] ECF No. 40-7.

[35] ECF No. 40-8.

[36] ECF No. 42-1 at ¶ 6.

to his grievances. Campbell cannot show that there is no valid penological interest in serving meals promptly when the food arrives. And he provides no evidence to support his allegations that his mail was delayed or that his cell was searched in retaliation for filing grievances and that these procedures do not advance a legitimate penological interest. Defendants are therefore entitled to summary judgment on claim two.

### 3.    *Claim three—deliberate indifference to safety and serious medical needs*

Campbell also alleges that defendants violated his Eighth and Fourteenth Amendment rights to be "housed in a safe environment, due to having no proper stepping at all to maneuver from the top bunk to the ground."[37] In March 2012, while incarcerated at the NNCC, Campbell fell when trying to climb up to the top bunk in his cell.[38] He alleges that NNCC medical staff waited 20–30 minutes before calling an ambulance. Campbell was eventually transported to Carson-Tahoe Hospital, where he was diagnosed with a bruised hip and back, and a sore neck.[39] He was prescribed pain medication and transported back to NNCC. He claims that, upon his return to NNCC, medical staff took his pain medication and placed him in a cell with no light for one week, during which time he was only given pain medication once.[40] Campbell contends that defendants had a duty to protect him from an unsafe environment and to give him proper medical attention.[41]

I liberally construe this claim as an Eighth Amendment claim for deliberate indifference to Campbell's safety and serious medical needs. To prevail on these claims, Campbell must show that defendants acted with "deliberate indifference" to his serious medical needs or safety[42] by satisfying "both an objective standard—that the deprivation was serious enough to constitute cruel and unusual

---

[37] ECF No. 9 at 9.

[38] *Id.*

[39] *Id.* at 10.

[40] *Id.*

[41] *Id.*

[42] *Farmer v. Brennan*, 511 U.S. 825, 828 (1994).

punishment—and a subjective standard—deliberate indifference."[43] Deliberate indifference requires showing that "the official[s] [knew] of and disregard[ed] an excessive risk to [that inmate's] [health or] safety."[44] Thus, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and [the official] must also draw the inference."[45]

First, Campbell's claim that his Eighth Amendment rights were violated because his bunk bed lacks proper steps fails as a matter of law because, even if there are no steps, this is far from a deprivation of "the minimal civilized measure of life's necessities."[46] And even if the missing steps rose to the level of a constitutional deprivation, Campbell offers no evidence to show that defendants were subjectively aware of, and disregarded, this risk to his safety. For example, there is no evidence that Campbell or other inmates suffered bunk-bed falls in the past and the defendants failed to remedy the situation.

Campbell's deliberate-indifference-to-serious-medical-needs claim also fails. To prevail on that claim based on a delay in medical treatment, a prisoner must show that the delay led to further injury.[47] Thus, Campbell's claim that defendants waited 30 minutes to call an ambulance after he fell is not actionable because he has not shown—or even alleged—that this delay in treatment led to further injury. Campbell's allegations that prison officials denied him his prescribed pain medication without providing an adequate substitute may make out a prima facie claim for deliberate indifference, but Campbell has offered no admissible evidence to show that he was prescribed medication or that prison officials deprived him of that medication in response to this summary-judgment challenge.

Campbell also cites to the Fourteenth Amendment. To the extent that Campbell asserts these deliberate-indifference claims under the Fourteenth Amendment, they fails as a matter of law

---

[43] *Snow v. McDaniel*, 681 F.3d 978, 985 (9th Cir. 2012).

[44] *Farmer*, 511 U.S. at 837.

[45] *Id.*

[46] *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981).

[47] *Shapley v. Nevada Bd. of State Prison Comm'r*, 766 F.2d 404, 407 (9th Cir. 1985).

1  because Campbell does not allege or offer any evidence to show that any similarly situated inmates
2  were treated differently without a rational relationship to a legitimate state purpose.[48]  For example,
3  Campbell does not allege that other inmates have steps to their bunks, or were provided more
4  adequate medical treatment.  Accordingly, I also grant summary judgment on claim three.

        **4.**    *Claim 4— failure to supervise and conditions of confinement*

6      In claim four, Campbell asserts that Director Cox and Warden Neven have failed to provide
7  proper housing and to supervise their employees.[49]  Campbell asserts that (1) the prison is too cold,
8  (2) there is no restroom in the yard, (3) he is forced to read in dark conditions, and (4) he is only
9  given one roll of toilet paper per week; toilet paper should be issued as needed.[50]

10      The Constitution "does not mandate comfortable prisons,"[51] and only those deprivations
11  denying "the minimal civilized measure of life's necessities" are sufficiently serious to form the
12  basis for an Eighth Amendment violation.[52]  "Some conditions of confinement may establish an
13  Eighth Amendment violation 'in combination' when would not do so alone, but only when they have
14  a mutually enforcing effect that produces the deprivation of a single, identifiable human need such as
15  food, warmth, or exercise—for example, a low cell temperature at night combined with a failure to
16  issue blankets."[53]

17      Campbell has not shown that any condition or combination of conditions deprived him of the
18  minimal civilized measure of life's necessities.  Campbell offers no evidence to show the
19  temperature in his cell, and he acknowledges that during the winter months he had a blanket and a

---

[48] *San Antonio School Dist. v. Rodriguez*, 411 U.S. 1 (1973).

[49] ECF No. 9 at 11.

[50] *Id.* at 13.

[51] *Rhodes*, 452 U.S. at 349.

[52] *Id.*

[53] *Wilson v. Seiter*, 501 U.S. 294, 304 (1991) (internal citations omitted).

jacket to keep warm,[54] so he cannot show that he was subjected to inhumane temperatures. Associate Warden Nash declares that (1) the temperature was not 26 degrees as Campbell alleges and (2) there are no thermometers in inmates' cells, so it would be impossible for Campbell to know the temperature, and (3) prison officials and maintenance supervisors verified that the heating and cooling units were working correctly after Campbell filed grievances complaining that his cell was cold.[55] Campbell offers nothing to refute this evidence. Therefore, Campbell cannot prevail on his conditions-of-confinement claim based on extreme cold.

The lack of bathrooms in the yard also cannot support Campbell's conditions-of-confinement claim. There are other bathrooms in the prison, including in Campbell's cell. Being forced to leave the yard to use the restroom does not amount to a constitutional deprivation. Campbell's toilet-paper claim likewise fails. Being limited to one roll of toilet paper per week (with additional rolls available for purchase or for free with a doctor's note)[56] is not a sufficiently serious deprivation.

Claim four fails for the additional reason that Campbell cannot establish supervisory liability against Director Cox and Warden Neven. There is no *respondeat superior* liability under § 1983. To prevail on a claim of supervisory liability under § 1983, a prisoner must show that the "supervisor acted, or failed to act, in a manner that was deliberately indifferent to an inmate's Eighth Amendment rights."[57] Even if Campbell stated a constitutional deprivation, he does not allege or offer any evidence to show that Director Cox and Warden Neven were aware of any of these alleged violations, so they cannot be liable. Accordingly, defendants are entitled to summary judgment on claim four.[58]

---

[54] ECF No. 9 at 11.

[55] ECF No. 42-1 at 4.

[56] ECF No. 40-16; 42-1 at ¶ 8.

[57] *Starr v. Baca*, 652 F.3d 1202, 1206–07 (9th Cir. 2011).

[58] Campbell also cites to the Fourteenth Amendment in claim four. As explained under claim three, Campbell does not allege or offer any evidence to show that any similarly situated inmates were treated differently, i.e., that their cells were warmer or that they received extra toilet paper, so he cannot state a claim under the Fourteenth Amendment.

### 5. *Claim five—deliberate indifference to serious medical needs*

In claim five, Campbell alleges that HDSP medical staff and Dr. Aranas have denied him proper medical care.[59] He alleges that, on January 27, 2013, he believed that he had symptoms of a stroke, so he kited medical. Dr. Aranas examined Campbell the next month, told Campbell that he had a muscle spasm, and took a blood sample.[60] Campbell has not received his blood-test results.[61] Campbell also alleges that he did not receive his eyeglasses upon transfer to HDSP in a timely fashion.[62]

Indifference to a prisoner's medical needs must be substantial; mere indifference, negligence, medical malpractice, or even gross negligence are insufficient to establish deliberate indifference.[63] At most, Campbell alleges that he disagrees with Dr. Aranas's medical conclusion that he did not have a stroke and Dr. Aranas's decision not to treat him for it. A mere difference of medical opinion likewise does not suffice;[64] a prisoner must instead show that the course of treatment chosen was medically unacceptable under the circumstances and taken in conscious disregard to his health.[65] Campbell's claim that he did not receive his eyeglasses in a timely fashion also fails because Campbell lacks evidence to show that the delay in treatment worsened his eyesight.[66] I therefore grant summary judgment in defendants' favor on claim five.

---

[59] ECF No. 9 at 14.

[60] *Id.*

[61] *Id.*

[62] *Id.* at 15.

[63] *Id.* at 1081–82 (internal citations and quotations omitted).

[64] *See Franklin v. State of Or., State Welfare Div.*, 662 F.2d 1337, 1344 (9th Cir. 1981).

[65] *See Toguchi v. Chung*, 391 F.3d 1051, 1058 (9th Cir. 2004).

[66] *Shapley,* 766 F.2d at 407 (stating that a prisoner alleging deliberate indifference to serious medical needs based on a delay in treatment must show that the delay in treatment caused further injury).

**6.     Claim six—extortion**

Campbell contends that Director Cox and Warden Neven have further violated his rights by "allowing him to be extorted by the [HDSP] administration."[67] Campbell claims he was charged $350.00 for a $50.00 television and $80.00 for a $20.00 CD player.[68] Campbell does not have a constitutional right to an affordable television or CD player in prison, so claim six fails as a matter of law. Additionally, Campbell has not alleged or offered any evidence to show that Director Cox and Warden Neven were aware of the alleged overcharging or participated in the alleged violation, so he cannot establish supervisory liability.[69] Defendants are entitled to summary judgment on claim six.

**7.     *Claim 7—conditions of confinement***

Finally, Campbell alleges that HDSP food-service manager Wilson and Warden Neven have been intentionally underfeeding him.[70] He claims that defendants are required to feed him 2,900 calories per day, and he believes he is only receiving 1,500 calories per day "due to being hungry all day everyday and the fact that defendants are deceiving [him] with an explanation that 'we are suppose to get the same amount of food thats on the s[i]lver [sic] tray.'"[71]

Defendants' exhibits show that every meal the NDOC serves to inmates is based on a menu that has been approved by a qualified dietician to meet the nationally recommended allowance for basic nutrition.[72] A dietician evaluates the menus at least quarterly to verify adherence, and food-service staff uses standardized measuring utensils to ensure that inmates receive approved portions.[73]

---

[67] ECF No. 9 at 16.

[68] *Id.* at 17.

[69] Campbell again invokes the Fourteenth Amendment in claim six. This claim also fails under a Fourteenth Amendment analysis because Campbell does not allege or offer evidence to show that other inmates were offered more favorable pricing.

[70] ECF No. 9 at 18.

[71] *Id.*

[72] ECF Nos. 42-1 at 3, 40-23.

[73] ECF No. 42-1 at 3.

If the medical department determines that an inmate requires a special diet, that inmate will be served a meal to suit his medical needs.[74] Campbell does not allege that he has medical needs requiring a special diet. Campbell also lacks evidence to show that he is only receiving 1,500 calories per day or that his diet is otherwise deficient. Accordingly, defendants are also entitled to summary judgment on claim seven.

## Conclusion

Accordingly, with good cause appearing and no reason for delay, IT IS HEREBY ORDERED, ADJUDGED, and DECREED that **defendants' motion for summary judgment [ECF No. 40] is GRANTED.** The Clerk of Court is instructed to enter judgment in favor of defendants and against Campbell on all claims.

And because all claims are being adjudicated in favor of the defendants and this case is being closed, IT IS FURTHER ORDERED that **Campbell's motion for preliminary injunction [ECF No. 44] and motion to show cause [ECF. No. 45] are DENIED as moot.**

The Clerk of Court is instructed to CLOSE THIS CASE.

Dated this 26th day of May, 2016.

_____
Jennifer A. Dorsey
United States District Judge

---

[74] *Id.*